CITY OF CHANDLER, a Municipal Corporation, Appellant,

v.

STATE of Oklahoma, ex rel., DEPARTMENT OF HUMAN SERVICES, Board of County Commissioners, County of Lincoln County, State of Oklahoma, and Stroud Industrial Trust Authority, a Public trust, Appellees.

No. 74906.

Supreme Court of Oklahoma.

Oct. 6, 1992.

Larry K. Lenora, Erwin, Butts & Lenora, P.C., Chandler, for appellant.

Jonna S. Geitgey, David A. Brown, Asst. Gen. Counsel, Dept. of Human Services, Oklahoma City, for appellee, Dept. of Human Services.

Richard James, James, Gilmore and Hodgens, Stroud, for appellee, Stroud Indus. Trust Authority.

SIMMS, Justice:

The City of Chandler (City) appeals a declaratory judgment entered by the district court in favor of the Department of Human Services (DHS) and the Stroud Industrial Trust Authority (Stroud Trust). The court determined that 56 O.S.1981, § 189a authorizes DHS to relocate its Lincoln County office to the City of Stroud although the City of Chandler is the county seat of Lincoln County. We affirm. The stipulated facts follow.

DHS maintains local offices in each county in Oklahoma to conduct its state governmental operations with most of these offices located in the county seats pursuant to 56 O.S.1981, § 189a. City concedes that § 189a is the appropriate statutory authority for DHS to follow in determining the location of its county offices. Section 189a provides, in pertinent part, as follows:.

"(a) The *board of county commissioners* in each county *shall be required to furnish* quarters for the local units of the Oklahoma Department of Human Services, such quarters to be located in the county courthouse or other suitable building in the county seat; to furnish light, heat and water and supply adequate toilet facilities; and *it shall be the duty of the county excise board to provide adequate appropriations to enable the county commissioners to comply* with this provision; provided, that *if no suitable or adequate facilities are available in the county courthouse or in the county seat, the same shall be furnished and supplied in the city* or town in the county, but *not the county seat*

thereof, having the greatest population.* Provided, that *the Department may enter into an agreement* with the board of county commissioners *for financial participation, by the Department, in the payment of rent on space leased for use by the Department,* or in the cost of repairs of buildings or space used by the Department, or the cost of janitorial services and utility services, *if the Oklahoma Public Welfare Commission determines that such payment is necessary for adequate space for units of the Department* and that monies for such purpose are obtainable from the State Assistance Fund without detriment to programs administered by the Department."

"(b) If the Oklahoma Public Welfare Commission determines that adequate or suitable quarters, office space or facilities for the local units of the Department are not obtainable, the Department ... *may enter into a lease agreement for the rental of space and facilities in a building or buildings constructed or renovated by the county, or a* state agency, *public trust* or building authority, for the purpose of providing office space to the Department or any other public agency or agencies. ... (Emphasis added).[1]

In order to ensure client privacy and a suitable working environment, DHS policy required its office facilities to contain a minimum of 200 square feet per employee. When determining whether the space available was adequate, DHS would consider this policy as well as the cost to the department.

The Board of County Commissioners of Lincoln County (county commissioners) furnished DHS some office space in the Lincoln County Courthouse in the county seat, Chandler. This office space was furnished along with light, heat, water and toilet facilities at no cost to DHS. However, the space was too small to adequately house all of DHS's employees, and the Child Welfare

---

1. Section 189a was amended in 1988 when the Oklahoma Public Welfare Commission was renamed the Oklahoma Commission for Human Services. Other amendments made to § 189a at that time have no effect upon this case.

Division had to lease space from a private entity.

Moreover, the county commissioners could not furnish office space adequate to quarter all DHS offices in one building without expending a great deal of money. They were willing to furnish the needed space but had no funds available to construct or lease additional space. Therefore, the commissioners agreed to furnish the additional space in Chandler as long as DHS paid for the construction costs. As a result of this situation, the governing body of DHS determined that adequate or suitable quarters were not obtainable without cost.

Stroud Trust, a public trust, submitted a proposal to DHS to provide office space in Stroud, and the governing body of DHS voted to accept the Stroud Trust offer and relocate to Stroud. Soon thereafter, DHS received a proposal from another public trust, the Lincoln County Public Facilities Authority (Lincoln Authority). Lincoln Authority offered to expand the current Chandler office by building additional space for a total of 8,635 square feet at an estimated annual cost to DHS of $43,175.00 including utilities and janitorial services. This amount of space would be sufficient to meet the requirements of DHS's 200 square feet per employee policy, but the annual cost could possibly increase or decrease in relation to changes in the cost of utilities or janitorial services.

In turn, Stroud Trust modified its earlier proposal and promised to provide 11,000 square feet of space for $19,250.00, including janitorial services. Estimated utilities cost were $13,750.00 and the total projected annual cost to DHS was $41,348.00. After consideration of each new proposal, DHS approved the one submitted by Stroud Trust, and subsequently entered into a lease agreement with the organization.

City then initiated this action in Lincoln County District Court against DHS, the county commissioners, and the Stroud Trust seeking a declaration that DHS exceeded its authority under § 189a when it entered into the lease agreement, and further requesting a permanent injunction to prohibit DHS from moving its Lincoln County office to Stroud. The action was transferred to Oklahoma County District Court on venue grounds.

Under the Declaratory Judgments Act, any determination made by a competent court is reviewable in the same manner as other judgments. 12 O.S.1981, § 1654. Therefore, we must review the record to determine if the trial court committed error in construing the statute in the manner it did. *Seventeen Hundred Peoria, Inc. v. City of Tulsa,* 422 P.2d 840 (Okla.1966).

In statutory construction, legislative intent is the governing principle. *Humphrey v. Denney,* 757 P.2d 833 (Okla.1988); *Darnell v. Chrysler Corp.,* 687 P.2d 132 (Okla.1984). In ascertaining such intent, we are to interpret the language of the entire act with a "reasonable and sensible construction." *Udall v. Udall,* 613 P.2d 742, 745 (Okla.1980). A presumption arises that the Legislature expressed its intent in the statute at issue and that it intended what it expressed. *Darnell,* supra. When the language of the statute is plain, such language will be followed without further inquiry. *Humphrey,* supra.

Under subsection (a) of the statute, the county commissioners are required to furnish quarters for the local units of DHS in the county courthouse or other suitable building in the county seat. If suitable quarters or adequate facilities are unavailable in the courthouse or county seat, then the county commissioners are to furnish the same in the city or town, other than the county seat, which has the greatest population. The intent behind such provision is clear. DHS better serves the citizens of the county when it is located in the city with the greatest population because that is where the largest concentration of potential clients reside. Moreover, such offices would be easily found if located in the courthouse.

However, the Legislature perceived that in some counties the courthouse could not adequately contain both the offices of the

county officials and the DHS quarters. Hence, the Legislature made it possible for DHS to locate its unit in the most populous city other than the county seat when suitable office quarters and adequate facilities were unavailable in the courthouse or other buildings in the county seat. Such relocation did not absolve the duty of the county commissioners to furnish the quarters. Rather, if possible, the county commissioners were required to provide such quarters in the secondary site.

The Legislature restructured § 189a in 1980 so that subsection (a) contained provisions authorizing DHS to enter into an agreement with the county commissioners to participate in the costs of the office space. 1980 Okla.Sess.Laws, ch. 24, § 1. Previously, the Legislature had added subsection (b) to provide for instances where the governing body of DHS determines that adequate or suitable quarters are not obtainable from the county commissioners. 1967 Okla.Sess.Laws, ch. 202, § 1. This amendment authorized DHS to enter into agreements with the county commissioners or with any State agency or public trust to construct or lease office space and facilities. Apparently, this provision was the first authorization for DHS to obtain office space from an entity other than the county commissioners.

The language of § 189a is plain and unambiguous. It is clear to this Court that the Legislature intended to devise a preferential order to be followed when DHS was seeking office space for its local units. The legislative intent is for the county commissioners to initially furnish office space and facilities at no cost to DHS. Where this arrangement was not possible, the Legislature authorized DHS to enter into an agreement with the county commissioners to share the costs of furnishing such space and facilities.

This scheme continues with a legislative authorization for DHS to enter into a construction agreement or lease agreement with either of three types of entities, the county commissioners, a state agency, or a public trust. It appears that the provision requires DHS to first attempt to obtain its office space from the county commissioners, preferably in the courthouse, but also, if necessary, in other buildings in the county seat. Yet, when adequate and suitable quarters are not obtainable from the county commissioners in the county seat or largest town other than the county seat, DHS is free to look elsewhere within the limits of subsection (b).

The record indicates that DHS wholly complied with the statutory directives in seeking adequate and suitable office space. The Lincoln County Board of Commissioners were furnishing office space which was not adequate or suitable for DHS's needs in Lincoln County. The county commissioners could not furnish additional office space and facilities as the county was without funds to construct or lease additional quarters. To obtain the necessary quarters from the county commissioners, DHS would have to enter into an agreement to share the costs of additional space.

Subsection (a) states that DHS "may" enter into an agreement with the county commissioners to construct or lease the necessary additional space. The use of the word "may" instead of "shall" makes such procedures permissive rather than mandatory. *State ex rel. Cartwright v. Oklahoma Natural Gas Co.*, 640 P.2d 1341 (Okla.1982). Therefore, DHS was not required to enter into an agreement with the county commissioners to construct or lease additional space.

With no space obtainable from the county commissioners, DHS was entitled to look to subsection (b) of § 189a to determine what authority it had to locate its office space elsewhere. Subsection (b) is clear in its language and legislative intent to allow DHS to enter into contracts with either the county commissioners, a state agency or a public trust. Nothing in the language indicates that either entity is to be preferred over the other.

DHS followed the provisions of § 189a and selected the Stroud Trust location over the Lincoln Authority location. Nothing in the record suggests that DHS abused its authority in approving the Stroud Trust proposal and relocating to Stroud.

City primarily asserts § 189a(a) requires DHS to locate in the county seat such portions of its units as may be adequately housed there. Since the county commissioners were furnishing adequate space for a portion of the employees for free, at least those employees should be housed in the Lincoln County Courthouse office space occupied by DHS in Chandler.

Under City's reading of the statute, DHS must split up its staff and house some of its personnel in the office space provided by the county commissioners while the rest of the staff is quartered elsewhere. However, there is nothing to indicate that § 189a would require DHS to split its staff in this manner. In fact, a forcible split such as City advocates would, in our estimation, be tantamount to furnishing inadequate or unsuitable quarters. City fails to cite any relevant authority to support its position, and we dismiss this proposition.

■ City's argument continues that since the Lincoln Authority could provide adequate space for *all* the employees in the county seat at a competitive price, the first resort was for DHS to maintain its office in that space. However, as we noted, once the DHS commission determines the furnished space is not adequate or suitable, it may invoke the provisions of § 189a(b) and enter into an agreement with a public trust. The provision makes no requirement that the public trust must provide space in the county seat. Furthermore, subsection (a) makes it clear that quarters may be located in the city other than the county seat which has the greatest population. City's argument is unpersuasive and unsupported by the plain language of the statute.

City further asserts error in the trial court's order by contending the ruling violates the dictates of § 21 of Senate Bill No. 46 of the First Regular Session, 39th Legislature, which was primarily an appropriations bill. This provision, found at 1983 Okla.Sess.Laws, c. 283, § 21, reads:

"The Department of Human Services shall not relocate to another town any of their offices which are currently located in a county seat town."

This provision appears to be at odds with § 189a. Two issues arise with respect to the Senate Bill provision: (1) whether it was codified, and (2) whether the legislature intended it to be effective only for Fiscal Year 1983.

City concedes the provision was never codified, but argues that it was intended to be. No relevant case law is cited as authority for its proposition. Moreover, although several of the provisions in the Senate bill indicate that they are new laws or amendments to existing laws, § 21 is neither designated as an amendment to § 189a nor as a new law.

The title of the bill includes the phrase "PROVIDING FOR CODIFICATION." Yet, none of the provisions provide for codification of the entire bill. Rather, each of the new laws and amendments separately provide for their own individual codification. Section 21 of the bill does not provide for codification, nor was it actually codified.

Furthermore, the provision was not included in the recompilation of Oklahoma Statutes 1991. Indeed, the provision, 74 O.S.1991, § 285, was intentionally *omitted* from the official compilation of statutes, indicating that it was an appropriations bill and is now considered ineffectual.

City has failed to convince this Court that the provision in question was either intended to be codified or was intended to be effective during 1987 when DHS entered into the lease with Stroud Trust. The trial court's ruling was not contrary to the Senate bill provision.

City next urges the trial court's ruling contravenes Okla. Const., Art. 10, § 9 which prohibits the use of ad valorem taxes for state purposes. City asserts that since ad valorem taxes are the primary source for county funding, the county commissioners violate the provision when they use funding from ad valorem taxes to provide office space for DHS, a State agency.

The trial court's order reads:

"IT IS THEREFORE ORDERED, ADJUDGED and DECREED that when the County Commissioners in each county do not provide adequate facilities in the

County Courthouse or other suitable buildings in the County Seat, then the Department of Human Services, as set out in 56 O.S. § 189a has the authority to enter into a lease agreement for adequate facilities in the City or Town, but not the County Seat having the greatest population."

This order in no way contravenes Art. 10, § 9. Rather, the trial court merely determined that under the subject statute, DHS was authorized to enter an agreement with Stroud Trust where the county commissioners failed to provide adequate office space and facilities. There is nothing to indicate that the funding for space provided by the county commissioners came from ad valorem taxes, nor were ad valorem taxes used for a State purpose prior to or after the lease agreement.

This dispute does not involve the use of county ad valorem taxes for state purposes, but rather, is a dispute between DHS, Stroud Trust, and the City of Chandler. Ad valorem taxes re not involved, nor are the county commissioners.

In essence, City is urging this Court to find portions of § 189a unconstitutional so that it can construe the remaining portion in its favor. However, City has wholly failed to show why the statute should be partially or entirely deemed unconstitutional. The proposition is without merit.

In the next four propositions, City asserts the trial court's ruling is contrary to (1) the legislative intent of § 189a, (2) the express provisions of § 189a, (3) DHS's own actions in construing the legislative intent of § 189a, and (4) public policy. We have already discussed the legislative intent and express provisions of § 189a, and the order contradicts neither. The third contention concerning DHS's actions in construing § 189a in other counties is irrelevant herein because the agency properly followed the statute in making its decision regarding office space and facilities in Lincoln County.

City argues in the public policy proposition that the Legislature has recognized the county seat as the most logical and convenient location for DHS local offices.

This seems clear to this Court as well. However, City contends that DHS's interpretation of § 189a would allow them to "locate their facilities in the most remote village of a county so long as they could save a few dollars." The trial court did not hold that DHS could do such, nor did DHS argue for such an interpretation.

The simple fact is the trial court found that the commission did not abuse the authority it is granted by § 189a when it chose to accept the proposal submitted by Stroud Trust. Adequate and suitable quarters were not available in the county courthouse or other building in the county seat, and DHS followed the plan established by the Legislature in locating a local office under those circumstances.

The judgment of the trial court is AFFIRMED.

LAVENDER, HARGRAVE, SUMMERS, and WATT, JJ., concur.

OPALA, C.J., and KAUGER, J., concur in part, dissent in part.

HODGES, V.C.J., and ALMA WILSON, J., dissent.