2001 OK 20

Lloyd SULLINS, Plaintiff,

v.

AMERICAN MEDICAL RESPONSE OF OKLAHOMA, INC., a Delaware corporation, and Warren Properties, Inc., a Delaware corporation, Defendants.

No. 95,047.

Supreme Court of Oklahoma.

Feb. 20, 2001.

Rehearing Denied April 3, 2001.

Don Manners, Kirby Evans, Oklahoma City, OK, attorneys for Lloyd Sullins, plaintiff.

David A. Walls, Alan W. Bardell, Oklahoma City, OK, attorneys for American Medical Response of Oklahoma, Inc., defendant.

Rex K. Travis, Gary L. Brooks, Oklahoma City, OK, attorneys for Oklahoma Trial Lawyers Association, amicus curiae.

Mark W. Schilling, Tulsa, Oklahoma, attorney for Emergency Medical Services Authority, amicus curiae.

BOUDREAU, Justice:

¶1 In August of 1998, Lloyd Sullins dove into the shallow end of a swimming pool at an apartment complex in Oklahoma City. He injured his spinal cord and nearly drowned. EMSA, the 911 emergency medical service in Oklahoma City, was called to the scene. According to Sullins, the ambulance personnel dropped Sullins on his head, exacerbating his injury.

¶2 On October 21, 1999, more than a year after the accident, Sullins filed a negligence action in the United States District Court for the Western District of Oklahoma against American Medical Response of Oklahoma, Inc. (AMR) and Warren Properties, Inc.[1] AMR raised a statute of limitations defense, alleging that the tort claim is barred because Sullins failed to give notice of the claim within one year of the date of the injury as required by the Governmental Tort Claims Act (GTCA).[2] In support of its defense, AMR contended that as the designated operations contractor for EMSA, a public trust and a political subdivision under the GTCA, it qualified as an agency of a political subdivision protected by governmental immunity under the GTCA.

¶3 The United States District Court for the Western District of Oklahoma certified the governmental-immunity question to this Court, pursuant to the Revised Uniform Certification of Questions of Law Act.[3] The federal district court framed the legal question as follows:[4]

1. Whether a private entity, such as AMR, may be cloaked with immunity under the Oklahoma Governmental Tort Claims Act when acting as an "agency" of a public trust, such as EMSA?

¶4 In the certification order, the federal district court set forth the facts relevant to the legal question. EMSA is a public trust created to provide emergency medical services in Oklahoma. Its trust indenture requires that EMSA select an operations contractor to operate the dispatching and field

1. Sullins did not name EMSA as a defendant in the federal district court suit, however, this Court granted EMSA's request to file an *amicus curiae* brief on the certified questions. Warren Properties, Inc., the alleged owner of the apartment complex where Sullins' injury occurred, filed a waiver of the right to file a brief on the certified questions.

2. 51 O.S.1991, §§ 151, et seq. The Oklahoma Legislature has amended various sections of the GTCA since the 1991 recodification. This opin-ion will reference the most recent version of the statute unless an earlier version is controlling.

3. 20 O.S.Supp.2000, §§ 1601, et seq.

4. The federal district court certified two questions to this Court. Because we answer the first question in the negative, we need not answer the second question which concerned the factors to be considered in determining whether a private entity is an "agency" of a public trust for purposes of the GTCA.

operations of the emergency medical services. EMSA, a public trust, and AMR, a private entity, entered into a contract under which AMR became the operations contractor. AMR was the operations contractor at the time of Sullins' injury.

¶ 5 Although the certified question relates to AMR's immunity from tort liability when "acting as an 'agency' of a public trust, such as EMSA," the certified facts do not include a determination or stipulation that AMR was acting as an "agency" of a public trust. Rather, the certified facts provide that EMSA selected AMR as its operations contractor. AMR's claim that it is immunized from tort liability, as a matter of law, rests squarely on its contract with EMSA, a public trust, under which EMSA selected it as operations contractor to operate the dispatching and field operations of the emergency medical services. Accordingly, we reformulate the question within the bounds of the certified facts as follows: [5]

> For purposes of the Governmental Tort Claims Act, is a private entity an "agency" of a public trust merely because the private entity contracts with the public trust to provide the services which the public trust is authorized to provide?

¶ 6 We answer the reformulated question in the negative.

## THE EMS SYSTEM

¶ 7 The municipalities of Tulsa and Oklahoma City jointly established an emergency medical services system (EMS system) through an Inter-local Agreement.[6] Pursuant to the agreement, both municipalities accepted beneficiary status of the Emergency Medical Services Authority,[7] a public trust created for the purpose of providing the emergency medical services, and they also adopted a uniform code for emergency medical services (EMS code).[8] The agreement and the EMS code delineated three areas of responsibility for the EMS system.

¶ 8 First, the municipalities were required to create an administrative agency with regulatory powers to oversee the clinical aspects of the EMS system. Accordingly, the municipalities created the Emergency Physicians Foundation (EPF). The EPF membership consists of board-certified emergency medicine physicians in the Tulsa and Oklahoma City areas. The EPF also has a nine-member board of directors, the Medical Control Board, consisting of board-certified emergency medicine physicians engaged full-time in the practice of emergency medicine. The Medical Control Board sets the standard of care for emergency medical services in Tulsa, Oklahoma City, and other regulated areas. To assure compliance with its standard of care, the Board hires a Medical Director.

¶ 9 Second, the agreement and the EMS code provide that EMSA is responsible for the overall financial affairs of the EMS system. EMSA controls the rate structure, subsidy, and all billing and collections. EMSA is also responsible for acquiring, as owner, all EMS vehicles, equipment and other property necessary to provide dispatching and ambulance services in the regulated areas.[9]

¶ 10 Third, to comply with its general charge to provide ambulance services to the citizens in the regulated areas, the agreement and the EMS code obligate EMSA to select an operations contractor to operate the EMS control centers and to provide dispatching and in-field services under EMSA's name and EMS license.[10] EMSA must select the

---

5. 20 O.S.Supp.2000, § 1602.1.

6. The Inter-local Cooperation Agreement between Tulsa and Oklahoma City is authorized by 74 O.S.1991, §§ 1001, et seq.

7. The Emergency Medical Services Authority (EMSA) is a trust created for the furtherance of a public function pursuant to 60 O.S.1971, §§ 176, et seq.

8. The EMS code is a published ordinance in the Tulsa City Ordinances, Title 37A, §§ 100, et seq.,

and the Oklahoma City Municipal Code, Chapter 6–1, et seq.

9. 60 O.S.1991, § 176(a) authorizes a public trust "to issue obligations and to provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose ... or municipality or any combinations thereof, in real or personal property" for the benefit of the municipality.

10. The operations contractor's personnel also use EMSA's vehicles and equipment. They also

operations contractor through competitive bid.[11] The operations contractor supplies the personnel necessary to operate the ambulance service throughout the regulated areas at the price fixed by the competitive bid.[12]

## THE GOVERNMENTAL TORT CLAIMS ACT

¶ 11 AMR's immunity from liability turns on our construction of the GTCA. In enacting the GTCA in 1984,[13] the Oklahoma Legislature expressly adopted the doctrine of sovereign immunity, freeing the "state, its political subdivisions, and all their employees acting within the scope of their employment, whether performing governmental or proprietary functions," [14] from liability for torts. However, following the modern trend,[15] the Legislature also waived sovereign immunity by extending "governmental accountability to all torts for which a private person or entity would be liable subject only to the act's specific 'limitations and exceptions.' " [16] In waiving sovereign immunity, the Legislature restricted the waiver "only to the extent and in the manner prescribed in the act".[17]

¶ 12 The GTCA prescribes the manner in which any person asserting a claim against the state or a political subdivision must proceed. Among other things, a claimant must present written notice of a claim within one year of the date the loss occurs.[18] If a person asserting a claim against the state or a political subdivision fails to present timely notice, the claim is forever barred.[19]

¶ 13 AMR describes itself as a private corporation that has contracted with EMSA, a public trust, to operate the dispatching and field operations of the emergency medical services. AMR contends that by virtue of the contract it has become the "designated operations contractor" for EMSA and thus an "agency" of EMSA, a political subdivision under the GTCA. AMR takes the position that as an "agency" of EMSA, it must be sued in conformity with the requirements of the GTCA and therefore it is entitled to notice of the claim within one year of the date the loss occurs under § 156 of the GTCA.[20]

¶ 14 Sullins, on the other hand, responds that the Oklahoma Legislature did not extend the status of an "agency," with its concomitant immunity, to a private entity solely on the basis that the entity provides services to or for a public trust. Sullins argues that AMR is an independent contractor under common law theories of agency. Accordingly, Sullins maintains that AMR is a nongovernmental entity and not entitled to notice under the GTCA.

## A PRIVATE ENTITY IS NOT AN "AGENCY" OF A PUBLIC TRUST UNDER THE GOVERNMENTAL TORT CLAIMS ACT MERELY BECAUSE IT

---

are provided 24–hour access to qualified on-line medical control by an authorized emergency medicine physician who oversees the medical care being provided by the EMS personnel in the field at no cost to the operations contractor.

11. 60 O.S.1991, § 176(h).

12. The Inter-local Agreement defines "operations contract" as "the contract for purchase of ambulance services between EMSA and its then-contracted firm (the 'Operations Contractor') for provision of ambulance services throughout the Regulated Service Area."

13. 1984 Okla.Sess.Laws, ch. 226, effective October 1, 1985.

14. 51 O.S.1991, § 152.1(A).

15. *Vanderpool v. State of Oklahoma ex rel. Oklahoma Historical Society*, 1983 OK 82, 672 P.2d 1153; and *Newman v. State*, 1971 OK 84, 490 P.2d 1079 (Hodges, J., dissenting).

16. *Anderson v. Eichner*, 1994 OK 136, ¶ 9, 890 P.2d 1329, 1336; and 51 O.S.1991, § 153(A).

17. 51 O.S.1991, § 152.1(B).

18. 51 O.S.Supp.2000, § 156(A) provides that any person having a claim shall present the claim to the state or a political subdivision for any appropriate relief; § 156(B) provides that a claim against the state or a political subdivision must be presented within one year after the loss occurs or be forever barred; and § 156(C) provides that a claim against a political subdivision shall be in writing and filed with the clerk of the governing body.

19. *Id.*

20. According to the certified order, it is undisputed that Sullins did not timely present written notice of his tort claim to either AMR or EMSA.

CONTRACTS WITH A PUBLIC TRUST TO PROVIDE THE SERVICES WHICH THE PUBLIC TRUST IS AUTHORIZED TO PROVIDE.

 ¶ 15 In considering AMR's contention that it is an "agency" of EMSA, our analysis must begin with the definitional portion of the GTCA, § 152(8) which defines a political subdivision. That subsection defines a political subdivision to include, among other entities, "a public trust where the sole beneficiary or beneficiaries are a city, town, school district or county."[21] The definition of a political subdivision also embraces all its "institutions, instrumentalities or agencies."[22]

¶ 16 Since the definition of a political subdivision includes its "agencies," we must turn to another subsection of the definitional portion of the GTCA. Subsection 152(2), defines agency as follows:

As used in this act, Section 151 et seq. of this title:

. . .

2. "Agency" means any board, commission, committee, department or other instrumentality or *entity designated to act in behalf of the state or a political subdivision.*

. . .

(Emphasis added.)

If AMR is an entity designated to act in behalf of EMSA, a public trust, then it is an "agency" of EMSA, a political subdivision under the GTCA.

 ¶ 17 In resolving this question, we must construe the meaning of the statutory language "entity designated to act in behalf of the state or a political subdivision." The rules of statutory construction are well established. First and foremost, we must give effect to the Legislature's intent.[23] If the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and no further construction is required or permitted.[24] However, when the meaning of a statutory provision is unclear or its application is uncertain, the language is to be given a reasonable and sensible construction.[25]

¶ 18 The statutory language in question, "entity designated to act in behalf of the state or a political subdivision", is not so clear as to be beyond interpretation. The meaning of the language is doubtful and uncertain because it is susceptible to multiple interpretations. Accordingly, rules of statutory construction may be used to ascertain the statute's meaning.[26]

 ¶ 19 In our attempt to discern the intended meaning of the language "entity designated to act in behalf of a political subdivision", we are guided by the legal maxim *noscitur a sociis.* Under the maxim, the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it.[27] The definition of "agency" in § 152(2) expressly includes a *board, commission, committee, or department of the state or a political subdivision.* Each of these entities is either a body organized to execute a governmental function or a division of governmental administration. Stated otherwise, these are entities through which the

---

**21.** 51 O.S.Supp.2000, § 152(8) reads in pertinent part:

8. "Political subdivision" means:
a. a municipality,
b. a school district,
c. a county,
d. *a public trust* where the sole beneficiary or beneficiaries are a city, town, school district or county . . .
*and all their* institutions, instrumentalities or *agencies* . . . .
(Emphasis added.)

**22.** *Id.*

**23.** *Phillips v. Duke Manufacturing, Inc.,* 1999 OK 25, 980 P.2d 137.

**24.** *Community Bankers Association of Oklahoma v. Oklahoma State Banking Board,* 1999 OK 24, 979 P.2d 751.

**25.** *City of Chandler v. State ex rel. Department of Human Services,* 1992 OK 137, 839 P.2d 1352.

**26.** *Cox v. Dawson,* 1996 OK 11, ¶ 6, 911 P.2d 272, 276.

**27.** *Application of Central Airlines,* 1947 OK 312, ¶ 0, 199 Okla. 300, 185 P.2d 919, 920, *Syllabus by the Court.*

state or a political subdivision acts in the administration of government.

¶ 20 A private entity such as AMR is not an "entity designated to act in behalf of the state or a political subdivision" merely because it contracts with a public trust to provide services which the public trust is authorized to provide. Notwithstanding the fact that it may be providing a public service, a private entity such as AMR does not act in the administration of government. It is not charged by law with the responsibility of conducting any public business. It is organized by private citizens pursuant to general corporate laws. It is not controlled by or answerable to the public, but is governed by its own board of directors. Its employees are not governmental employees. Except as it has voluntarily obligated itself by contract, it is not required to provide services or remain in existence. In summary, it possesses all the attributes of a private business enterprise, a non-governmental entity.

■ ¶ 21 Other factors support our conclusion that a private entity such as AMR is not an "entity designated to act in behalf of the state or a political subdivision" merely because it contracts with a public trust to provide services that the public trust is authorized to provide. We observe that the terms "private corporation," "private entity" and "operations contractor" are absent from the statutory definition of "agency." Had the Legislature intended to include these entities, it could have specifically referenced them in defining "agency." It did not. We cannot divine immunity from a silent text, nor will we read immunity into doubtful and ambiguous legislative language.[28]

■ ¶ 22 Moreover, the GTCA expressly excludes "independent contractors" or "an employee of independent contractors" from the definition of "employee," indicating that the Legislature intended to exclude public contractors from the immunity provisions of

the GTCA.[29] Expressions of doubtful meaning will be construed so as to promote harmony in the various provisions of a statute and give practical effect to the intention of the legislature if possible.[30]

¶ 23 We find nothing in the statutory language of the GTCA to support the notion suggested by the dissent that the Legislature intended to allow a public trust, by public contract, to declare a private entity a public agency and thus confer immunity upon that private entity. We conclude that the Legislature did not intend to include a private entity such as AMR in the definition of "agency" merely because the entity contracts with a public trust to provide services to the public. Accordingly, we answer the reformulated certified question in the negative. A private entity is not an "agency" of a public trust under the Governmental Tort Claims Act merely because it contracts with the public trust to provide the services which the public trust is authorized to provide.

**REFORMULATED CERTIFIED QUESTION ANSWERED.**

¶ 24 HARGRAVE, C.J., WATT, V.C.J., and LAVENDER, KAUGER, and SUMMERS, JJ., concur.

¶ 25 OPALA, J., concurs in result.

¶ 26 HODGES and WINCHESTER, JJ., dissent.

OPALA, J., concurring in result.

¶ 1 The court holds today that a private entity is not a public trust's "agency" within the meaning of the Governmental Tort Claims Act merely because it is contractually obligated to a public trust to provide the latter with services. I concur in the court's **bottom-line answer** but not in its pronouncement. The determinative issue here is whether the defendant American Medical Response of Oklahoma, Inc. [AMR] may

**28.** *Gunn v. Consolidated Rural Water & Sewer,* 1992 OK 131, ¶ 7, 839 P.2d 1345, 1349; and *Jarvis v. City of Stillwater,* 1983 OK 88, ¶ 10, 669 P.2d 1108, 1111.

**29.** 51 O.S.Supp.2000, § 152(5)(a)(1) provides that employee "... does not mean a person or other legal entity while acting in the capacity of

an independent contractor or an employee of an independent contractor...."

**30.** *Board of Education of Burbank Independent School Dist. No. 20 v. Allen,* 1945 OK 18, 195 Okla. 209, 156 P.2d 596.

claim *implied immunity* from tort liability as a municipal agency. Just as the court does today, I would also answer in the negative. **My bottom line is that EMSA (a public trust) lacks statutory power to confer public agency status on AMR (a nongovernmental entity).**

## I.

### ANATOMY OF THE CONTROVERSY

¶2 On 21 October 1999 Lloyd Sullins brought suit in the United States District Court for the Western District of Oklahoma against American Medical Response of Oklahoma, Inc. [AMR] and Warren Properties, Inc. His claim was based on an August 1998 incident in which he was injured after diving into the shallow end of a swimming pool at an Oklahoma City apartment complex. Sullins injured his spinal cord and nearly drowned. EMSA, the 911 emergency medical service in Oklahoma City, was called to the scene. Sullins claims the ambulance personnel dropped him on his head, exacerbating the injury.

¶3 AMR is under contract to provide personnel to EMSA, a public trust created to deliver emergency medical services in Oklahoma. The trust indenture that created EMSA requires its selection of a contractor to maintain all dispatch and field functions. AMR was the operations contractor at the time of Sullins' injury.

### A.

### AMR's contention

¶4 AMR raised a time-bar defense, alleging that the tort action is untimely because

Sullins failed to give notice of his claim within one year of the date of injury. Notice is required by the Governmental Tort Claims Act (GTCA).[1] AMR claims that in its capacity as the EMSA-designated operations contractor it qualifies under that act as an agency of a political subdivision which is protected by GTCA-conferred immunity.

### B.

### Sullins' contention

¶5 Sullins does not dispute that EMSA is a public trust; he urges that AMR functions as an independent private contractor who is *not entitled* to GTCA protection.

## II.

### THE LEGAL SOURCES OF IMMUNITY

¶6 The only question before us is whether the AMR's contract with EMSA *implicitly designates* the former as an agency of, or appendage to, the latter so as to confer upon AMR EMSA's GTCA immunity from tort liability. I conclude that GTCA does not confer on AMR the immunity sought to be drawn from the contract under inquiry.

### A.

### Federal immunity law

¶7 *Some* federal jurisprudence applies the common-law regime of immunity. In that system, *but not in Oklahoma,* government immunity from civil liability in tort is allocated on a "functional analysis."[2] In applying

---

1. 51 O.S.1991, §§ 151 et seq.

2. *First American Bank v. Okla. Indus. Finance Auth.,* (Opala, J. dissenting) 1997 OK 155, ¶24, 951 P.2d 625, 639. *See, e.g., Richardson v. McKnight,* 521 U.S. 399, 403–4, 117 S.Ct. 2100, 2103–04, 138 L.Ed.2d 540 (1997) (private prison guards, unlike those who work directly for the government, do not enjoy immunity from suit in a § 1983 case); *Clinton v. Jones,* 520 U.S. 681, 694, 117 S.Ct. 1636, 1644, 137 L.Ed.2d 945 (1997) (in a § 1983 action there is no absolute immunity for damages arising from "unofficial conduct"); *Buckley v. Fitzsimmons,* 509 U.S. 259, 268–69, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (there is no absolute immunity for a prosecutor's conspiracy to manufacture false evidence that was later introduced at grand jury proceedings and at trial, or for a prosecutor's out-of-court statements to the press); *Burns v. Reed,* 500 U.S. 478, 484–86, 111 S.Ct. 1934, 1938–39, 114 L.Ed.2d 547 (1991) (prosecutors have absolute immunity for their actions in participating in a probable-cause hearing but not in giving advice to the police); *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988) (a judge is not entitled to absolute immunity for the "administrative" act of dismissing an employee); *Malley v. Briggs,* 475 U.S. 335, 342–43, 106 S.Ct. 1092, 1096–97, 89 L.Ed.2d 271 (1986) (a police officer is not entitled to absolute immunity for false statements made in a warrant application); *Cleavinger v. Saxner,* 474 U.S. 193, 201, 106 S.Ct. 496, 500, 88

this approach, federal courts look to the "nature of the functions" performed at the critical time and not necessarily to the status of the defendant.[3] This common-law approach followed by federal courts came to be developed during the nineteenth century.[4] *There is here no place for a functional analysis. Oklahoma's legislative regime of immunity has rejected the notion AMR invokes in this context.*

## B.

### Oklahoma's immunity law

¶ 8 In contrast to federal law, Oklahoma's immunity regime is governed solely by legislative enactments. The common-law doctrine

of sovereign immunity stands abrogated *in toto* by *Vanderpool v. State*,[5] the watershed case that altered the essence of government immunity that protects public funds from tort claims by private persons. *Vanderpool* abrogates the judge-made source of that doctrine. It leaves unaffected *the power of the legislature to occupy and regulate the entire field of governmental tort liability.* The legislative form of Oklahoma's governmental liability, which is incorporated into the body of this State's statutory law,[6] waives immunity "only to the extent and in the manner" provided in the Act.[7] Save solely for the Act's specific *exceptions* and *limitations,* the GTCA *extends governmental accountability*

L.Ed.2d 507 (1985) (there is no absolute immunity for prison disciplinary board members who adjudicate free from various procedural safeguards, including, the right to counsel, cross-examination, a transcript, and direct judicial review); *Briscoe v. LaHue,* 460 U.S. 325, 342, 103 S.Ct. 1108, 1119, 75 L.Ed.2d 96 (1983) (all witnesses, including those who give perjured testimony, are absolutely immune from civil suit under § 1983); *Harlow v. Fitzgerald,* 457 U.S. 800, 810, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982) (government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known); *Butz v. Economou,* 438 U.S. 478, 511–13, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978) (federal officials are not liable for mere mistakes in judgment, whether the mistake is one of fact or one of law); *Imbler v. Pachtman,* 424 U.S. 409, 420–25, 96 S.Ct. 984, 990–93, 47 L.Ed.2d 128 (1976) (state prosecutors have absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial).

3. *Briscoe, supra* note 2 at 342, at 1119; *Forrester, supra* note 2 at 229, at 545 ("it [is] the nature of the function performed, not the identity of the actor who performed it, that inform[s] our immunity analysis") (emphasis added); *Cleavinger, supra* note 2, at 201, at 501 (absolute immunity "flows not from rank or title or 'location within the Government' but from the nature of the responsibilities of the individual official"), quoting *Butz, supra* note 2 at 511, at 2913.

4. *See Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 347, 20 L.Ed. 646 (1871). In this early judicial immunity case, the Supreme Court affirmed the distinction between a judge acting within and without his judicial capacity. "The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in

the exercise of their judicial functions, obtains in all countries where there is any well-ordered system of jurisprudence. It has been settled doctrine in the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country. It has, as Chancellor Kent observes, 'a deep root in the common law.' *Yates v. Lansing,* 5 Johnson, 282, 291."

5. 1983 OK 82, 672 P.2d 1153, 1156–57. *Vanderpool* teaches that in the absence of a statute conferring partial or total immunity, the state, its political subdivisions and their employees acting within the scope of their employment would stand liable in tort in the same manner as a private individual or corporation.

6. The GTCA was the Legislature's response to this court's abrogation of sovereign immunity in *Vanderpool, supra* note 5 at ¶ 21–23, 1156–1157 (1983). The act is both an adoption and conditional waiver of the sovereign immunity doctrine. The terms of 51 O.S.1991 § 152.1 provide in pertinent part:

"A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state ... whether performing governmental or proprietary functions *shall be immune from liability for torts.*
B. The state, *only to the extent and in the manner provided in this act* waives its immunity...."
(emphasis added).
The terms of 51 O.S.1991 § 153(A) provide in pertinent part:
"The state ... shall be liable for loss resulting from its torts ... *subject to the limitations and exceptions specified in this act and only where the state ... if a private person or entity,* would be liable for money damages under the laws of this state."
(emphasis added).

7. 51 O.S.1991 § 152.1(B).

*to all torts for which a private person or entity would be liable.*[8]

¶ 9 Acting in a *sovereign capacity*, states create agencies to perform a wide range of functions at different levels. The subordinate units of government are not themselves *sovereign bodies.*[9] Rather, they serve as *instrumentalities of the state acting pursuant to delegated authority.*[10] While EMSA may, in the context of this case, be regarded as falling under the umbrella of government immunity, AMR cannot enjoy the same protection without some explicit legislative declaration. *There was here neither implicit nor explicit designation of AMR as public agency.* No private contract may be viewed as rising to the status of a legislative declaration that is capable of creating a municipal agency. **In short, AMR's contention that tort immunity is *ipso facto* conferred, explicitly or implicitly, by contractual assignment and performance of functions that coincide with governmental** mission is contrary to this court's post-Vanderpool exposition of statutory law.

## III.

## SUMMARY

¶ 10 ***There is no Oklahoma common law of governmental immunity.***[11] That body of knowledge stands abrogated *in toto* by *Vanderpool.*[12] Statutory law does not permit judicial extension of immunity without explicit legislative authority. **EMSA, *qua* public agency, is powerless to transfer its own GTCA-conferred immunity by contract with some private entity.**[13] That power, whose regulation is vested solely in the legislature, must be exercised by unambiguous statutory text. Courts will not divine immunity from silence. Nor will protection from tort liability be derived from any unclear or doubtful enactment's language.[14]

8. The terms of 51 O.S.1991 § 153 provide:
 "A. The state or a political subdivision *shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment* subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision *shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.*
 B. The liability of the state or political subdivision under this act shall be exclusive and *in place of all other liability of the state, a political subdivision or employee at common law or otherwise.*"
 (emphasis supplied). *See also Hughey v. Grand River Dam Authority*, 1995 OK 56, ¶ 3–5, 897 P.2d 1138, 1141–42.

9. *First American Bank, supra* note 2 at ¶ 11, at 636. Sovereign power resides either in the federal government or in the several states. *See Community Communications Co., Inc. v. City of Boulder, Colo.*, 455 U.S. 40, 50, 102 S.Ct. 835, 842, 70 L.Ed.2d 810 (1982); *United States v. Kagama*, 118 U.S. 375, 379–81, 6 S.Ct. 1109, 1111–12, 30 L.Ed. 228 (1886).

10. *Id.* Government "bodies, with limited legislative functions, ... derived from, or exist in, subordination to" state sovereign bodies. *Kagama, supra* note 9, 118 U.S. at 379, 6 S.Ct. at 1111–12; *See also Benson & Gold Chevrolet, Inc. v. Louisiana Motor Vehicle Comm'n*, 403 So.2d 13, 20 (La.1981) ("the principle is well established that an administrative agency must act in conformity with its statutory authority, which it cannot exceed"). *See in this context* Shenefield, *The Parker v. Brown State Action Doctrine and the New Federalism of Antitrust*, 51 Antitrust L.J. 337, 341 (1982) ("[s]ubordinate [state] agencies operate under delegations of state sovereign power, and can only follow state policy.").

11. Common-law protection of judges from tort liability is a rubric entirely distinct from "governmental tort immunity." *See Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 1974, 80 L.Ed.2d 565 (1984). In the Anglo American world of law judges are not regarded as government agents when exercising an adjudicative function. *Farrell v. State*, 204 Misc. 148, 123 N.Y.S.2d 29, 32 (N.Y., 1953); *Cromelin v. U.S.*, 177 F.2d 275, 277 (5th Cir., 1949); *see* Abimbola A. Olowofoyeku, *Suing Judges: A Study of Judicial Immunity*, Clarendon Press Oxford (1993), pgs. 158, 162 et seq.

12. See supra note 5.

13. *Delegata potestas non potest delegari*—one to whom authority stands delegated by law may not, without specific empowerment, redelegate it to another. *Bushert v. Hughes*, 1996 OK 21, 912 P.2d 334, 339; *New Orleans v. Sanford*, 69 So. 35, 41, 137 La. 628.

14. *Gunn v. Consolidated Rural Water & Sewer*, 1992 OK 131, ¶ 7, 839 P.2d 1345, 1349; *Jarvis v. City of Stillwater*, 1983 OK 88, ¶ 8–10, 669 P.2d 1108, 1111.

WINCHESTER, J., with whom HODGES, J., joins, dissents:

¶ 1 I respectfully dissent. I agree with the majority opinion that 51 O.S.Supp.2000, § 152(2) controls, and that "If AMR is an entity designated to act in behalf of EMSA, a public trust, then it is an 'agency' of EMSA, a political subdivision under the GTCA." Marjority Opinion ¶ 16. I believe it could be such an entity. AMR's status as a private contractor does not automatically exclude it from protection under the Governmental Tort Claims Act. The exclusion of "an independent contractor" from the definition of "employee," in § 152(5)(a)(1) is not a clear expression of the Legislature that private contractors be excluded from protection under the Act.

¶ 2 When a private contractor acts with the express consent of the city, as the sole agent of a public trust, serving the public in the same manner as a public servant, then it is entitled to the same protection the city would receive. By referring to other entities in § 152(5)(a)(1), the Legislature has recognized that cities may perform traditional functions or they may choose to contract that service exclusively to one private business. Section 152(2) contemplates that it may be more economical for a city to hire one private business to provide the service to the citizens than it would be for the city to erect buildings, purchase and maintain equipment and pay salaries and benefits to city employees, thus creating a whole new department. This is especially true for small towns that may find it more economical to contract out their ambulance service along with several other small towns. Individually, providing the service may be prohibitive, but collectively they may be able to provide the service. As business and government partner to solve the problems of the citizens, each should be able to utilize the law to its fullest. As cities and counties turn more to private contractors to efficiently perform public services that are normally performed by their employees, as Tulsa County has with a jail run by Corrections Corporation of America,[1] such contrac-

tors should not be penalized merely because of their private status.

¶ 3 The protection of the Governmental Tort Claims Act should extend to a private contractor where the sole and only service is a substitute for a service ordinarily provided by the city, which serves the public for the public good pursuant to the private contractor's agreement with the city. Although a private contractor has not been charged by law with the responsibility of conducting public business before it contracts with the city, where the Legislature permits an agency to hire a private contractor to perform a service traditionally provided by the city, the contract itself creates a duty to the public the contractor serves. Each case must be determined by its facts according to how extensive a private contractor has taken on a public duty customarily provided by a government agency. For this reason, the question of whether a private contractor is providing services to the public as an agent of the city and entitled to the protection of the Governmental Tort Claims Act should be a fact question.

---

1. *Tulsa Co. F.O.P., Lodge No. 188 v. Board of County Commissioners of Tulsa Co.,* 2000 OK 2,

995 P.2d 1124.