Donald GUNN, Jr., Plaintiff–Appellant,

v.

CONSOLIDATED RURAL WATER & SEWER DISTRICT NO. 1, JEFFERSON COUNTY, OKLAHOMA, Defendant–Appellee.

No. 75722.

Supreme Court of Oklahoma.

Sept. 22, 1992.

J. William Archibald, Holloway, Dobson, Hudson & Bachman, Oklahoma City, for plaintiff-appellant.

John Kinslow, Kinslow & Krug, P.C., Lawton, for defendant-appellee.

1. Okl., 749 P.2d 105 (1988). For a discussion of our teachings in *Gingles,* see Part I *infra.*

2. The terms of 85 O.S.1981 § 5 are:

   *"No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties."* (Emphasis added.)
   Section 5's amendment in 1992 is inapplicable to this case; its terms were enacted *after* this cause of action arose (Okl.Sess.L.1992, Ch. 294, § 3, eff. Sept. 1, 1992).

3. The pertinent terms of 51 O.S.Supp. 1988 § 155(14) provide:

   "The state or a political subdivision shall not be liable if a loss or claim results from: * * * (14) *Any loss to any person covered by any workers' compensation act or any employer's liability act;"* (Emphasis added.)

**OPALA, Chief Justice.**

The issues presented are: (1) Did the trial court err in relying upon *Gingles v. Central State Griffin Memorial Hospital*[1] for authority to dismiss this governmental worker's statutory tort claim for retaliatory discharge? (2) Do the terms of 85 O.S. 1981 § 5[2] of the Oklahoma Workers' Compensation Act shield governmental entities from statutory tort liability for wrongful discharge in retaliation for filing a compensation claim? (3) Does 51 O.S.Supp.1988 § 155(14)[3] of the Governmental Tort Claims Act immunize a governmental entity from tort liability for a retaliatory discharge? and (4) Does the 51 O.S.Supp.1988 § 155(5)'s[4] exemption of "discretionary acts" shield a governmental entity from liability for retaliatory discharge? We answer the first question in the affirmative and the remaining questions in the negative.

## THE ANATOMY OF LITIGATION

The defendant Consolidated Rural Water & Sewer District No. 1, Jefferson County [District] is organized and operated pursuant to the Oklahoma Rural Water, Sewer, Gas and Solid Waste Management Districts Act.[5] Rural water and sewer districts are

The quoted language was not changed by the 1991 amendment (Okl.Sess.L.1991, Ch. 55, § 2, eff. Sept. 1, 1991).

4. The applicable terms of 51 O.S.Supp. 1988 § 155(5) provide:
   "The state or a political subdivision shall not be liable if a loss or claim results from: * * * (5) *Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees;"* (Emphasis added.)
   The quoted portion was not changed by the 1991 amendment (Okl.Sess.L.1991, Ch. 55, § 2 eff. Sept. 1, 1991).

5. 82 O.S. 1981 §§ 1324.1 et seq. Gunn initially questioned the District's eligibility as a government entity covered by the Governmental Tort Claims Act since there was then no evidence that it was a rural water and sewer district organized under §§ 1324.1 et seq. This challenge came to be abandoned on appeal for want of its reassertion in the brief. *State ex rel. Remy v. City of Norman,* Okl., 642 P.2d 219, 222 (1982); *Amer. First Abstract v. Western Info. Syst.,* Okl., 735 P.2d 1187, 1189 (1987); *Hadnot v. Shaw,* Okl., 826 P.2d 978, 981 (1992). *We assume—for lack of contrary argument and record—that the District is a political subdivision*

deemed "political subdivisions" of the State of Oklahoma [State] within the meaning of the Governmental Tort Claims Act [Tort Claims Act][6] only for purposes of the Act's coverage. According to the record, Donald Gunn [Gunn], while a District employee, received an on-the-job injury and the District terminated him on February 28, 1989, after he had advised it of his intention to file a workers' compensation claim. Gunn notified his employer he believed his termination was in violation of state law. He then filed this suit for wrongful termination under §§ 5–7 of the Workers' Compensation Act [Compensation Act].[7] Argu-

ing that § 155(5) and (14) of the Tort Claims Act exempt it from liability, the District moved to dismiss the action for failure to state a claim upon which relief may be granted.[8] In reliance on *Gingles*,[9] the trial court dismissed the petition. As we view the record, the court ruled in essence that (1) the statutory prohibition against retaliatory discharge does not apply to political subdivisions of the State and, even if it did, (2) § 155(14) of the Tort Claims Act would exempt the District from liability in this case. Gunn, who elected to stand on his petition, now appeals from the dismissal.[10] We reverse the order and remand the cause for further proceedings.

*properly organized as a rural water and sewer district and is hence entitled to the protection of the Tort Claims Act.*

**6.** The terms of 51 O.S.Supp.1987 § 152(8)(g) are:

"As used in this act, Section 151 et seq. of this title: * * *
(8) 'Political Subdivision' means: * * *
(g) *for the purposes of the Governmental Tort Claims Act only, districts formed pursuant to the Rural Water, Sewer, Gas and Solid Waste Management Districts Act,*
* * *
and all their institutions, instrumentalities or agencies. * * *" (Emphasis added.)

The quoted portion was not changed by the 1989, 1990 and 1991 amendments (Okl.Sess.L. 1989, Ch. 286, § 8; Okl.Sess.L.1990, Ch. 313, § 1; Okl.Sess.L.1991, Ch. 55, § 3 and Ch. 250, § 6).

**7.** For the text of 85 O.S.1981 § 5, *see supra* note 2.

The terms of 85 O.S.Supp. 1986 § 6 are:
"Except as provided in Section 29 of this act, a person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages, actual and punitive if applicable, suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. Exemplary or punitive damage awards made pursuant to this section shall not exceed One Hundred Thousand Dollars ($100,000.00). The burden of proof shall be upon the employee."

The terms of 85 O.S.Supp. 1986 § 6.1 provide:

"The liability of the state or any political subdivision as defined in Section 152 of Title 51 of the Oklahoma Statutes, that is found in violation of Section 6 of Title 85 of the Oklahoma Statutes shall be limited to the limits of liability contained in the Governmental Tort Claims Act."

The terms of 85 O.S. 1981 § 7 provide:
"The district courts of the state shall have jurisdiction, for cause shown, to restrain violations of this act."

Section 7's amendment in 1990 is inapplicable to this case; its terms were enacted *after* this cause of action arose (Okl.Sess.L.1990, Ch. 283, § 6, eff. Sept. 1, 1990).

**8.** The pertinent terms of 12 O.S.Supp. 1984 § 2012(B)(6) are:

"(B) Every defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading ... except that the following defenses may at the option of the pleader be made by motion: * * *
(6) *Failure to state a claim upon which relief can be granted;*" (Emphasis added.)

**9.** *Gingles, supra* note 1.

**10.** Gunn initially argued on appeal that he was not allowed an opportunity to amend his petition; he later withdrew that argument in his reply brief. *See* Gunn's brief in chief at p. 3 and reply brief at p. 2. *Admissions* against a party's interest made in a brief will be used to *supplement* a deficient appellate record. *Kwikset/Emhart v. Mayberry*, Okl., 800 P.2d 239, 240 n. 1 (1990); *Reeves v. Agee*, Okl., 769 P.2d 745, 754 (1989); *Womack v. City of Oklahoma City*, Okl., 726 P.2d 1178, 1181 n. 8 (1986).

## I

*GINGLES,*[11] A PRE-*VANDERPOOL*[12] DECISION, AFFORDS NO AUTHORITY FOR IMMUNIZING THE DISTRICT FROM STATUTORY TORT LIABILITY FOR RETALIATORY DISCHARGE

■ The District asserts that *Gingles* absolves it of liability for a retaliatory discharge in violation of §§ 5–7 of the Compensation Act.

The District's reliance on *Gingles* is misplaced. *Gingles* holds that the sovereign immunity doctrine shields a state hospital and its employees from statutory tort liability for retaliatory discharge. The harm that gave rise to *Gingles* occurred in 1983—well before October 1, 1985, the effective date of the Tort Claims Act and of *Vanderpool's*[13] abrogation of sovereign immunity. *Gingles* construed §§ 3, 5 and 6.1 of the Compensation Act *against the backdrop of pre-Vanderpool events,* concluding that by that enactment the legislature had not expressly waived the State's immunity. We hold today that *Gingles* does not govern this post-*Vanderpool* retaliatory discharge case.[14]

11. *Gingles, supra* note 1.

12. *Vanderpool v. State of Oklahoma, ex rel. Oklahoma Historical Society,* Okl., 672 P.2d 1153 (1983).

13. *Vanderpool, supra* note 12 at 1156–1157. *Vanderpool* brought Oklahoma within the then-prevailing view in the sister states.

14. *See* also *Presson v. Kay County Bd. of Com'rs,* Okl.App., 806 P.2d 88, 89 (1991).

15. The pertinent terms of 85 O.S.Supp. 1988 § 3(3) are:

"As used in the Workers' Compensation Act:
* * *
(3) 'Employer' ... means a person, partnership, association, corporation, ... departments, instrumentalities and institutions of this state and divisions thereof, counties and divisions thereof ..."
Section 3's amendment in 1992 is inapplicable to this case; its terms were enacted *after* this cause of action arose (Okl.Sess.L.1992, Ch. 294, § 2, eff. Sept. 1, 1992).

## II

IN POST-*VANDERPOOL* ERA IMMUNITY FROM STATUTORY TORT LIABILITY MAY NOT BE PRESUMED FROM AN AMBIGUOUS STATUTORY SCHEME

*Gingles,* a pre-*Vanderpool* case, concluded that the legislature had not waived governmental immunity by its failure to mention political subdivisions by name in § 5's litany of employers prohibited from discharging employees for pursuing compensation claims. The District's immunity from liability in post-*Vanderpool* era no longer can be drawn from a like reading of §§ 3(3)[15] and 5.

■ The District's statutory immunity depends today on sources far different from those which were available for the *Gingles'* sovereign immunity analysis. *Vanderpool*[16] teaches that, in the absence of a statute conferring partial or total immunity, the state, its political subdivisions, and employees acting within the scope of their employment, are liable in tort *in the same manner as a private person* or corporation.[17] The 1984 Tort Claims Act, which redefined the parameters of governmental tort liability,[18] provides in § 152.-1(B) that governmental immunity of the

16. *Vanderpool, supra* note 12.

17. *Vanderpool, supra* note 12; *Nguyen v. State,* Okl., 788 P.2d 962, 964 (1990). Post-*Vanderpool* jurisprudence teaches that governmental entities are liable for bodily injury and property damage if a nongovernmental entity would be liable in similar circumstances. *See, e.g., Lowrance v. Patton,* Okl., 710 P.2d 108, 110–111 n. 6 (1985), *Griggs v. State ex rel. Okl. Dept. of Transp.,* Okl., 702 P.2d 1017, 1018 (1985); *Nguyen, supra.*

18. The pertinent terms of 51 O.S.Supp. 1984 § 152.1 are:

"A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.
B. The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions.
* * * "

State and its political subdivisions is waived "only to the extent and in the manner provided in" the Act.[19] Tracking *Vanderpool's* rationale, § 153 extends governmental accountability to all torts for which *a private person or entity would be liable* subject only to the Act's specific "limitations and exceptions."[20] Section 155 lists thirty exceptions, none of which embraces the retaliatory termination of an employee. We are powerless to read into legislative law tort accountability exceptions not made in the text.[21]

The four corners of the Compensation Act yield no indication of legislative intent to arm a political subdivision with defenses not available to others when they are sued for retaliatory discharge. We hence reject the argument that § 5's terms—unchanged since the statute's construction in *Gingles*—clearly and unambiguously bar today's action. If § 5 is indeed ambiguous, it is so in failing explicitly to include governmental entities among the employers who are liable for retaliatory termination. The omission of these employers is not fatal to Gunn's claim. The post-*Vanderpool* remedial regime makes a political subdivision *liable* in tort unless it is *explicitly* immunized by law.[22] Retaliatory discharge under §§ 5–7 of the Compensation Act is a statutory tort.[23] *Webb v. Dayton Tire & Rubber Co.*[24] teaches that punitive damages are recoverable for a willful breach of duty that is owed under that statute. If the legislature did intend to shield governmental entities from retaliatory discharge responsibility, its objective remains unexpressed because it lies beyond the scope of the exceptions provided by the Tort Claims Act. Immunity cannot be read into a legislative text that is silent, doubtful or ambiguous.[25] Today's holding finds an eloquent reinforcement in the explicit reference made in § 6.1[26]—a post-*Vanderpool* enactment—to the existence of governmental liability for retaliatory discharge under the Compensation Act.

## III

### SUBSECTIONS 155(5) and (14) OF THE TORT CLAIMS ACT DO NOT SHIELD THE DISTRICT FROM LIABILITY
*Section 155(14) Analysis*

The District's assertion that § 155(14) of the Tort Claims Act exempts it from liability is contrary to settled law.

Section 155(14) provides that a public employer shall not be liable if a claim results from any loss "covered by any workers' compensation." This exemption is confined to claims of bodily injury or death from an on-the-job injury covered by the Workers' Compensation Act. An employee's retaliatory discharge remedy under §§ 5–7, which create a statutory tort for the employer's wrongful severance of an injured worker's employment status, is distinct from a compensation claim. The former remedy is *collateral* rather than *incidental* to that in

---

**19.** For the text of 51 O.S.Supp. 1984 § 152.1(B), *see supra* note 18.

**20.** The pertinent terms of 51 O.S.Supp. 1984 § 153 are:

"A. The state or a political subdivision *shall be liable for loss resulting from its torts or the torts of its employees* acting within the scope of their employment subject to the limitations and exceptions specified in this act and *only where the state or political subdivision, if a private person or entity, would be liable* for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.
B. The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise." (Emphasis added.)

*See Nguyen, supra* note 17.

**21.** *Fuller v. Odom,* Okl., 741 P.2d 449, 454 (1987).

**22.** *Jarvis v. City of Stillwater,* Okl., 669 P.2d 1108, 1111 (1983).

**23.** *Webb v. Dayton Tire & Rubber Co.,* Okl., 697 P.2d 519, 523 (1985); *Ingram v. Oneok, Inc.,* Okl., 775 P.2d 810, 812, 814 (1989).

**24.** *Supra* note 23.

**25.** *Jarvis, supra* note 22 at 1111; *Huff v. State,* Okl., 764 P.2d 183, 186 n. 19 (1988); *Ingram v. State,* Okl., 786 P.2d 77, 80 (1990); *Nguyen, supra* note 17 at 966–967 (Opala, V.C.J., concurring).

**26.** For the terms of 85 O.S.Supp. 1986 § 6.1, *see supra* note 7.

compensation.[27]  It is litigable solely in the district court.[28]

## Section 155(5) Analysis

■ The District's argument that § 155(5)'s [29] so-called discretionary function exception insulates it from liability is equally without merit.

Immunity for discretionary acts—another exception to the general rule of liability—must be narrowly construed.[30]  Discretionary conduct is that which lies outside the range of prohibited activity.[31]  Implicit in a claim for retaliatory discharge is conduct in breach of that which is legally allowable.  It charges the commission of an act that is the very antithesis of permissible conduct—one that by its very nature negates any notion of discretion or any choice among different courses of action.  Discharging an employee contrary to the applicable statute is not an exercise of discretionary function within the meaning of § 155(5).  It is a breach cognizable by law.[32]  When a statute restricts permissible conduct in managing personnel, discretion, which implies freedom of action, is *ipso facto* withdrawn.

## Analysis of Post–Vanderpool Jurisprudence

■ In *Vannerson v. Board of Re-*

**27.**  *WRG Construction Company v. Hoebel*, Okl., 600 P.2d 334, 336 (1979); *Pierce v. Franklin Elec. Co.*, Okl., 737 P.2d 921, 924 (1987); *Bostwick v. Atlas Iron Masters, Inc.*, Okl.App., 780 P.2d 1184, 1186 (1988); *Ingram, supra* note 23 at 811.

**28.**  *Ingram, supra* note 23 at 811;  *Webb, supra* note 23 at 522–523;  *WRG, supra* note 27 at 335–336.

**29.**  For the text of 51 O.S.Supp. 1988 § 155(5), *see supra* note 4.

**30.**  *Robinson v. City of Bartlesville Bd. of Educ.*, Okl., 700 P.2d 1013, 1016 (1985).  In *Nguyen, supra* note 17 at 963, the court notes that because almost all acts of public employees involve some element of choice and judgment, a broad interpretation of the discretionary exception would completely eliminate the government's liability under its general waiver of immunity.

**31.**  Section 155(5)'s discretionary exception has been considered in a number of cases where the challenged conduct was analyzed.  [1] *Nguyen, supra* note 17, holds that a decision to release a mental patient is not within a discretionary function in the § 155(5) sense.  [2] *Robinson, supra* note 30, holds that a governmental entity has discretion in determining whether to perform a public work or to make an improvement; but once the work is ordered, the duty to perform it is ministerial or operational and must be done with "reasonable care and in a non-negligent manner".  [3] *Walker v. City of Moore*, Okl., 837 P.2d 876 (1992) holds that the layout of a street and its traffic markings are discretionary acts, but maintenance of existing pavement markings is an operational and ministerial function outside the § 155(5) exception.  Initial policy-level or planning decisions are typically considered discretionary and exempt from liability; on the other hand, operations-level decisions made in the execution of policy are viewed as nonexempt ministerial duties.

*Robinson, supra* note 30 at 1016–1017.  *Nguyen, supra* note 17 at 964 n. 10, notes that the planning-operational approach to the analysis of immunity for discretionary acts was developed in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

**32.**  Oklahoma statutes provide a great variety of regulatory remedies for various forms of wrongful discharge.  *See, e.g.,* 40 O.S. 1991 § 199 (discharging an employee for filing a complaint with either his employer or the Commissioner of Labor about hour and safety violations is a misdemeanor punishable either by fine or imprisonment, or both); 38 O.S. 1991 §§ 34 and 35 (an employer who discharges an employee for absence owing to the latter's grand jury service is civilly liable for actual and punitive damages; such conduct is also punishable in a criminal misdemeanor prosecution); 44 O.S. 1991 § 208 (an employer is subject to fine or imprisonment, or both, for employee's discharge because of the latter's absence for military service); 85 O.S. 1991 §§ 5–7 (retaliatory discharge provisions of Compensation Act); 25 O.S. 1991 §§ 1101 et seq. (a regulatory act prohibiting an employer's discriminatory acts toward, or discharge of, a person because of race or color; the act proscribes retaliation for challenging discriminatory practice; the Human Rights Commission is charged with enforcing this law; the Commission's affirmative action order may include the hiring or reinstatement of an employee with back pay).  *See Tate v. Browning–Ferris, Inc.*, Okl., 833 P.2d 1218, 1230 n. 68 (1992).  There, an employee complained against his employer for a racially motivated discharge *in retaliation* for his earlier EEOC (Equal Employment Opportunity Commission) complaint.  *Tate* teaches that the employee who brings a common-law tort action for damages occasioned either by a racially motivated discharge or by one in retaliation for bringing a racial discrimination complaint states a common-law claim for tortious employment termination under *Burk v. K–Mart*, Okl., 770 P.2d 24 (1989).

*gents*[33] we affirmed a judgment on jury verdict for wrongful discharge as a result of an employee's discovery and report of illegal activities in the workplace. While not explicitly alluding to statutory immunity, *Vannerson* clearly demonstrates that the Tort Claims Act affords no immunity from common-law tort liability for wrongful discharge under *Burk.*[34] If a wrongful discharge, actionable under Oklahoma common law, does not fall within the Act's immunity, there is even less reason to hold that a statutory tort—not expressly exempted by the legislative text which creates the remedy—would lie within the sweep of the Act's exceptions.

## IV

### GUNN'S PETITION IS SUFFICIENT TO WITHSTAND THE QUEST FOR THE CLAIM'S DISMISSAL

Section 5 of the Compensation Act prohibits the discharge of a worker who has *"filed* a claim" or *"*instituted, in good faith, any proceeding" under the Compensation Act. The record is silent as to whether Gunn had filed a compensation claim before his discharge. Section 2008(A)(1) of the Oklahoma Pleading Code [Pleading Code] and Rule 8(a) of the Federal Rules of Civil Procedure, the progenitor of our pleading code, require that a pleading setting forth a claim for relief contain "a short and plain statement of the claim" consisting of "simple, concise and direct" averments showing that the pleader is entitled to relief.[35] This requirement is intended to ensure that the opposing party receive fair notice of what the plaintiff's claim is and the grounds upon which it rests.[36] Under § 2012(B)(6)[37] of the Pleading Code, dismissal for failure to state a claim upon which relief may be granted is appropriate only in circumstances where it is beyond a doubt that no factual situation exists which entitles the claimant to relief.[38] In appraising the sufficiency of a pleading challenged for failure to state a cause of action, the rule is that no dismissal may be effected unless it should appear beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief.[39] Gunn's petition, which states that he was wrongfully terminated in violation of §§ 5–7 of the Compensation Act, alleges facts upon which relief may be available. It is hence sufficient to withstand the District's quest for the claim's dismissal.

**33.** Okl., 784 P.2d 1053 (1990). *Vannerson* is a classic "whistleblower" case. A whistleblower is defined as a person who exposes his employer's wrongdoing. This type of case deals with a discharge for reporting—internally, publicly or both—an employer's illegal activities. *Hinson v. Cameron,* Okl., 742 P.2d 549, 553 n. 11 (1987).

**34.** *Burk, supra* note 32. *Burk,* which holds that termination of an at-will employee in contravention of a clear mandate of public policy is a common-law tort compensable in damages, fashions the parameters of an exception to the general at-will employment doctrine.

**35.** The terms of 12 O.S.Supp. 1987 § 2008(A)(1) provide:
"A. CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain:
1. A short and plain statement of the claim showing that the pleader is entitled to relief;
* * * *"
See *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Gay v. Akin,* Okl., 766 P.2d 985, 990 (1988).

**36.** *Conley, supra* note 35, 355 U.S. at 48, 78 S.Ct. at 102–103.

**37.** For the pertinent terms of 12 O.S.Supp. 1984 § 2012(B)(6), *see supra* note 8.

**38.** *Frazier v. Bryan Memorial Hosp. Authority,* Okl., 775 P.2d 281, 287 (1989). The Committee Comment to § 2012(B)(6) observes that § 2012(B) "is virtually the same as Federal Rule of Civil Procedure 12(b) ... [A] motion to dismiss for failure to state a claim upon which relief can be granted under paragraph 6 of subsection B of Section 2012 replaces the code versions of the general demurrer to the pleadings. But a petition should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

**39.** *Buckner v. General Motors Corp.,* Okl., 760 P.2d 803, 812 (1988); *Conley, supra* note 35, 355 U.S. at 47–48, 78 S.Ct. at 103; for pre-Code jurisprudence *see Doss Oil Royalty Co. v. Texas Co.,* 192 Okl. 359, 137 P.2d 934, 939 (1943).

The dismissal order is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

All Justices concur.