Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/02/2022 09:06 AM CST

- 405 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

Suzette D. Dutcher, appellant,
v. Nebraska Department of
Correctional Services, appellee.

___ N.W.2d ___

Filed September 9, 2022.    No. S-21-740.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Judgments: Appeal and Error.** Statutory interpretation is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

4. **Workers' Compensation: Jurisdiction: Legislature.** As a statutorily created court, it is the role of the Legislature to determine what acts fall within the Workers' Compensation Court's exclusive jurisdiction.

5. **Workers' Compensation: Legislature.** The Nebraska Workers' Compensation Act creates rights which did not exist at common law, and the Legislature may place such restrictions thereon as it sees fit.

6. **Statutes.** Statutes relating to the same subject matter are to be construed together so as to maintain a consistent and sensible scheme.

7. ____. Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.

8. **Statutes: Legislature.** It is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time the Legislature enacted the statute.

- 406 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

9. ____: ____. When the Legislature uses legal terms of art in statutes, such terms should be construed and understood according to their accepted legal meaning.

10. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.

11. ____: ____. An appellate court is not at liberty to add language to the plain terms of a statute to restrict its meaning.

12. **Statutes: Courts: Appeal and Error.** An appellate court does not sit as a superlegislature to review the wisdom of legislative acts.

13. **Fair Employment Practices: Discrimination: Intent.** Employment discrimination laws such as those found in the Nebraska Fair Employment Practice Act have not vested in the Nebraska courts the authority to sit as super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.

14. **Workers' Compensation.** The Nebraska Workers' Compensation Act covers personal injury or death caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, without regard to the negligence of the employer.

15. **Workers' Compensation: Torts: Intent.** There is no intentional tort exception to the Nebraska Workers' Compensation Act.

16. **Workers' Compensation: Torts.** Under the workers' compensation statutes, employees give up the complete compensation that they might recover under tort law in exchange for no-fault benefits that they quickly receive for most economic losses from work-related injuries and the employer receives immunity from common-law suit.

17. **Workers' Compensation: Immunity.** The reason for an employer's immunity is the quid pro quo by which the employer gives up his or her normal defenses and assumes automatic liability, while the employee gives up his or her right to common-law verdicts.

18. **Workers' Compensation.** When an employee sustains an injury that arises out of and in the course of his or her employment and such injury is covered by the Nebraska Workers' Compensation Act, then the employee surrenders his or her right to any other method, form, or amount of compensation or determination thereof for that injury against his or her employer or the workers' compensation insurer.

Appeal from the District Court for Red Willow County: David W. Urbom, Judge. Affirmed.

- 407 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

Tanya J. Hansen, of Smith, Johnson, Allen, Connick & Hansen, for appellant.

Douglas J. Peterson, Attorney General, James A. Campbell, Solicitor General, and Phoebe L. Gydesen for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

An employee of the Nebraska Department of Correctional Services (Department) was injured while participating in mandated self-defense training. The employee sought and received workers' compensation benefits from the time she was injured, including vocational rehabilitation. The employee was ultimately unable to find a position with the Department that would accommodate her physical restrictions, and her employment was terminated. She brought suit against the Department for wrongful termination on the basis of her disability, in violation of the Nebraska Fair Employment Practice Act (NFEPA).[1] The district court found that the exclusivity provisions of the Nebraska Workers' Compensation Act[2] provide the sole remedy for the employee against the Department in this situation, barring the employee's claim. The employee appeals. We affirm.

## BACKGROUND

Suzette D. Dutcher began working for the Department in February 2002 as a corporal. In 2009, she changed jobs within the Department, becoming a chemical dependency counselor. In 2010, Dutcher became a supervisor of the chemical dependency counselors.

---

[1] See Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Reissue 2021).

[2] Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 2021).

- 408 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

Being a supervisor meant that Dutcher's job became more administrative, but she still had contact with inmates when she mediated disagreements between counselors and inmates, taught classes, and conducted facility walk-throughs as part of her "officer of the day" duties. Dutcher testified in her deposition that she was required to maintain certification in "level 3" pressure point control tactics (PPCT) training. This training included self-defense techniques such as takedowns, ground fighting, and kicking. PPCT training was required yearly, and Dutcher was required to demonstrate different PPCT techniques that included kicking and kneeling in order to maintain her certification. PPCT training and certification was not explicitly listed in the supervisor job description or in an operational memorandum describing "officer of the day" duties.

In April 2015, Dutcher suffered an injury to her right knee while completing PPCT training. Dutcher timely notified the Department of her injury. Her medical expenses associated with the injury were covered through the State of Nebraska's third-party administrator for workers' compensation claims.

Dutcher initially engaged in physical therapy, which was unsuccessful. Dutcher had her first surgery in July 2015. In September 2015, Dutcher was able to return to her job with physical *restrictions. The physical limitations included no stooping, twisting, or bending her right knee;* no squatting, crawling, or kneeling; no kicking or hitting; and no running. Because of her physical restrictions, the Department required Dutcher to have a level 3 PPCT-certified employee with her when she conducted rounds or any time she interacted with inmates.

After returning to work, Dutcher had more surgeries in September 2015, June 2018, and August 2018. Dutcher received regular payments for temporary total disability starting in August 2015.

- 409 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

In September 2016, Dutcher received a letter from the Department advising her that 1 year had elapsed since work restrictions had been imposed and that since work restrictions remained, pursuant to Department policy, she had 90 days to find a new position or be terminated from her current position. After failing to find another position within the Department that could accommodate her physical restrictions, Dutcher's employment was terminated in December 2016. The Department explained that Dutcher was unable to fulfill the regular duties of her position. Dutcher admitted in her deposition that she was not physically capable of performing level 3 PPCT tactics or takedown techniques.

In March 2017, Dutcher was declared by her doctor to be at maximum medical improvement, with a permanent impairment rating and permanent work restrictions. Dutcher's permanent work restrictions included no lifting over 20 pounds; no stooping, twisting, bending, squatting, crawling, or kneeling; limits on the amount of walking, standing, and climbing; and no physical contact with inmates.

Rather than accepting the workers' compensation carrier's payment to close the claim based on Dutcher's reaching her maximum medical improvement, Dutcher elected to exercise her right to appointment of a vocational rehabilitation counselor. The Workers' Compensation Court approved Dutcher's election to participate in a vocational rehabilitation plan.

Dutcher's appointed vocational rehabilitation counselor indicated in her initial report that Dutcher may qualify for some social services jobs based on Dutcher's transferable skills, but that she would not likely earn wages comparable to what she was making at the time of her injury. After conducting market research regarding Dutcher's current educational level and qualifications, the counselor determined that Dutcher would need to secure additional education within her field or look at a new field to gain skills for future employment. Dutcher and her counselor decided the best plan was

- 410 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

to pursue an associate degree in business administration. The counselor developed a vocational rehabilitation plan for Dutcher to obtain such a degree with the expected completion in May 2021. After approving the plan, the Workers' Compensation Court ordered the payment of Dutcher's tuition, books, and incidentals.

Dutcher completed her vocational rehabilitation in May 2021 by obtaining her degree. However, rather than engage in the job placement process with her counselor, Dutcher decided to join a family agricultural business she owns with her husband.

As of July 2, 2021, Dutcher had received more than $199,000 in workers' compensation indemnity payments, which included $1,140 every 2 weeks in temporary total disability, permanent partial disability benefits, and a $61,275 lump sum payment in August 2019.

While Dutcher was receiving workers' compensation disability payments and engaging in her vocational rehabilitation plan, she filed a complaint on September 12, 2018, against the Department, alleging the Department violated the Americans with Disabilities Act of 1990 and the NFEPA. The Department removed the case to federal court, where the Americans with Disabilities Act of 1990 claim was dismissed. The remaining NFEPA claim was remanded to state court.

Dutcher alleged in relation to her claim under the NFEPA that because she had fulfilled all material terms and conditions of employment at all relevant times, the Department's proffered reason for terminating her employment was pretextual. She alleged that the real reason the Department terminated her employment was on the basis of her disability. Dutcher pointed out that the Department had originally accommodated her medical restrictions, and she asserted that "[p]erforming Level 3 PPCT take down techniques and restraints on inmates was not part of [her] regular job duties."

The Department's answer asserted that Dutcher's failure to "meet the occupational qualifications required by the

- 411 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

[Department] would have caused a direct threat which involved significant risks to the health and/or safety of [Dutcher] and others in the work place which could not be eliminated by a reasonable accommodation" and that as such, the termination of Dutcher's employment was "consistent with business necessity." Further, the Department asserted that to the extent Dutcher was denied an accommodation, such denial was because the accommodation would impose an undue burden or would have posed a direct threat to the health or safety of Dutcher or other individuals.

The Department moved for summary judgment on the basis of the exclusivity provisions of the Nebraska Workers' Compensation Act. After an evidentiary hearing, the district court entered an order granting the Department's motion for summary judgment. The district court concluded that the exclusivity provisions of the Nebraska Workers' Compensation Act, §§ 48-111 and 48-148, barred Dutcher's NFEPA claim as a matter of law. Dutcher appeals.

## ASSIGNMENTS OF ERROR

Dutcher assigns that the district court erred in determining her claim was barred by the exclusivity provisions of the Nebraska Workers' Compensation Act and, as such, erred in granting the Department's motion for summary judgment.

## STANDARD OF REVIEW

[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[3]

[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party

---

[3] *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020).

- 412 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[4]

[3] Statutory interpretation is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[5]

## ANALYSIS

[4,5] The Workers' Compensation Court is a statutorily created court designed to have jurisdiction over all injuries falling within the scope of the Nebraska Workers' Compensation Act.[6] As a statutorily created court, it is the role of the Legislature to determine what acts fall within the Workers' Compensation Court's exclusive jurisdiction.[7] The Nebraska Workers' Compensation Act creates rights which did not exist at common law, and the Legislature may place such restrictions thereon as it sees fit.[8]

Whether the exclusivity provisions of the Nebraska Workers' Compensation Act applied to the facts of this case, thereby depriving the district court of jurisdiction to hear Dutcher's NFEPA action, is a question of law as to the meaning of the relevant provisions of those two legislative acts. Thus, we begin by setting forth our principles of statutory construction.

[6-9] Statutes relating to the same subject matter are to be construed together so as to maintain a consistent and sensible scheme.[9] However, statutory interpretation begins with the

---

[4] *Id.*

[5] *Id.*

[6] *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 834 N.W.2d 236 (2013).

[7] *Id.*

[8] *Id.*

[9] See *Grothen v. Grothen*, 308 Neb. 28, 952 N.W.2d 650 (2020).

- 413 -

Nᴇʙʀᴀsᴋᴀ Sᴜᴘʀᴇᴍᴇ Cᴏᴜʀᴛ Aᴅᴠᴀɴᴄᴇ Sʜᴇᴇᴛs
312 Nᴇʙʀᴀsᴋᴀ Rᴇᴘᴏʀᴛs
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

text, and the text is to be given its plain and ordinary meaning.[10] It is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time the Legislature enacted the statute.[11] When the Legislature uses legal terms of art in statutes, such terms should be construed and understood according to their accepted legal meaning.[12]

[10-12] An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.[13] Also, an appellate court is not at liberty to add language to the plain terms of a statute to restrict its meaning.[14] An appellate court does not sit as a superlegislature to review the wisdom of legislative acts.[15]

## NFEPA

[13] Employment discrimination laws such as those found in the NFEPA have not vested in the Nebraska courts the authority to sit as super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.[16] The NFEPA states at § 48-1101 that it "is the policy of [Nebraska] to foster the employment of all employable persons in the state on the basis of merit . . . and to safeguard their right to obtain and hold employment without discrimination." The NFEPA provides at § 48-1104(1), in relevant part, that "[i]t shall be an unlawful

---

[10] *Nebraska Republican Party v. Shively*, 311 Neb. 160, 971 N.W.2d 128 (2022).

[11] *Id*.

[12] *Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022).

[13] *Nebraska Republican Party v. Shively, supra* note 10.

[14] *Spratt v. Crete Carrier Corp.*, 311 Neb. 262, 971 N.W.2d 335 (2022).

[15] *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003).

[16] *Baker-Heser v. State*, 309 Neb. 979, 963 N.W.2d 59 (2021).

- 414 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, disability, marital status, or national origin[.]"

Under § 48-1107.01(1), it is unlawful for a covered entity to "[d]iscriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment[.]" Section 48-1102(10)(a) defines "[q]ualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires" and states that "[c]onsideration shall be given to the employer's judgment as to what functions of a job are essential . . . ." Under § 48-1102(11), "[r]easonable accommodation shall not include accommodations which the covered entity can demonstrate require significant difficulty or expense thereby posing an undue hardship upon the covered entity."

While the NFEPA establishes an Equal Opportunity Commission to, among other things, receive, investigate, and pass upon charges of unlawful employment practices,[17] the NFEPA provides in § 48-1119(4) that "[a] complainant who has suffered physical, emotional, or financial harm as a result of a violation of section 48-1104 or 48-1114 may, at any stage of the proceedings prior to dismissal, file an action directly in the district court of the county where such alleged violation occurred" and that "[t]he district court shall file and try such case as any other civil action, and any successful complainant shall be entitled to appropriate relief, including temporary or permanent injunctive relief, general and special damages, reasonable attorney's fees, and costs."

---

[17] See §§ 48-1116 and 48-1117(1).

- 415 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

The NFEPA does not refer to the Nebraska Workers' Compensation Act, and it does not contain any provision relating to exclusivity. The only provision relating to construction of the act states, "Nothing contained in the [NFEPA] shall be deemed to repeal any of the provisions of the civil rights law, any other law of this state, or any municipal ordinance relating to discrimination because of race, creed, color, religion, sex, disability, or national origin."[18]

## Nebraska Workers' Compensation Act

[14,15] The Nebraska Workers' Compensation Act covers personal injury or death caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment,[19] without regard to the negligence of the employer.[20] Injury and personal injuries "mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom."[21] An accident "means an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury."[22] This court has long held that there is no intentional tort exception to the Nebraska Workers' Compensation Act.[23]

Section 48-110 states that when an employer and employee accept the provisions of the Nebraska Workers' Compensation Act, by express or implied agreement or as provided in § 48-112, the employee shall be compensated according to the schedule of the act. Section 48-111 provides in relevant part that "[s]uch agreement or the election provided for in section

---

[18] § 48-1124.

[19] § 48-101.

[20] § 48-110.

[21] § 48-151(4).

[22] § 48-151(2).

[23] *Estate of Teague v. Crossroads Co-op Assn., supra* note 6.

- 416 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

48-112 shall be a surrender by the parties thereto of their rights to any other method, form, or amount of compensation or determination thereof than as provided in the Nebraska Workers' Compensation Act . . . ." Section 48-148 provides in relevant part that if an employee, or the employee's dependents, files a claim for a personal injury from an employer subject to the Nebraska Workers' Compensation Act, that action "shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury."

[16,17] Workers' compensation laws reflect a compromise between employers and employees.[24] Under these statutes, employees give up the complete compensation that they might recover under tort law in exchange for no-fault benefits that they quickly receive for most economic losses from work-related injuries and the employer receives immunity from common-law suit.[25] The reason for the employer's immunity is the quid pro quo by which the employer gives up his or her normal defenses and assumes automatic liability, while the employee gives up his or her right to common-law verdicts.[26]

[18] We have said the Nebraska Workers' Compensation Act "'provides the exclusive remedy by the employee against the employer for *any* injury arising out of and in the course of the employment.'"[27] We have explained that § 48-148 of the Nebraska Workers' Compensation Act provides that if an employee's injury arises out of and in the course of employment, the employee's exclusive remedy is against the employer for workers' compensation.[28] Thus, we have held:

---

[24] *Pittman v. Western Engineering Co.*, 283 Neb. 913, 813 N.W.2d 487 (2012).

[25] See *Estate of Teague v. Crossroads Co-op Assn., supra* note 6.

[26] *Pittman v. Western Engineering Co., supra* note 24.

[27] *Bennett v. Saint Elizabeth Health Sys.*, 273 Neb. 300, 305, 729 N.W.2d 80, 84 (2007).

[28] *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

- 417 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

[W]hen an employee sustains an injury that arises out of and in the course of his or her employment and such injury is covered by the Nebraska Workers' Compensation Act, then the employee surrenders his or her right to any other method, form, or amount of compensation or determination thereof for that injury against his or her employer or the workers' compensation insurer.[29]

We have elaborated that while an individual can be an employee of an entity and nevertheless sue that entity in district court where the particular facts show that the suit in district court is not covered under or barred by the Nebraska Workers' Compensation Act,[30] the employee must allege sufficient facts that, if true, would demonstrate the Nebraska Workers' Compensation Act does not apply.[31]

We have never specifically addressed the exclusivity provisions of the Nebraska Workers' Compensation Act in the context of a civil claim brought in district court under the NFEPA. We have, however, found that the exclusivity provisions of the Nebraska Workers' Compensation Act applied to various other civil actions brought in district court, despite plaintiffs' arguments that the actions were sufficiently distinct from their workers' compensation claim to not "aris[e] from such injury." These have included actions brought in district court for wrongful death,[32] assault and battery,[33] bystander negligent infliction of emotional distress,[34] medical malpractice,[35] bad faith relating to administration of a workers' compensation claim,[36]

---

[29] *Ihm v. Crawford & Co.*, 254 Neb. 818, 821, 580 N.W.2d 115, 118 (1998).

[30] *Pittman v. Western Engineering Co., supra* note 24.

[31] *Estate of Teague v. Crossroads Co-op Assn., supra* note 6.

[32] *Id*.

[33] *Id*.

[34] *Pittman v. Western Engineering Co., supra* note 24.

[35] *Bennett v. Saint Elizabeth Health Sys., supra* note 27.

[36] *Ihm v. Crawford & Co., supra* note 29.

- 418 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

and violations of "'the Factory Act[,]' [Neb. Rev. Stat.] §§ 48-409 and 48-422, R. R. S. 1943."[37]

For instance, in *Pittman v. Western Engineering Co.*,[38] we rejected the plaintiff's argument that his claim for bystander negligent infliction of emotional distress after witnessing his wife's work-related death did not "aris[e] from such injury" for purposes of § 48-148. The plaintiff argued that his action did not arise from the personal injury for which he received workers' compensation benefits, because, with the exception of first responders, purely psychological damages are not recoverable under the definition of "injury" in the Nebraska Workers' Compensation Act. Further, the plaintiff argued his injuries arose separately from the injuries suffered by his wife, because they resulted solely from his shock of encountering the scene of her death.

We held that upon accepting payment as a dependent, by operation of § 48-148, the husband released his wife's employer from further claims arising from her injury, and that his action in district court was barred by the employer immunity found in § 48-148. We explained that the husband's claim was barred by the plain language of "arising from such injury." We utilized a "rational nexus" test and reasoned that the husband's claim "logically ar[ose]" from his wife's death, because, had her injury and resultant death not occurred, the husband's emotional distress claims would not have arisen.[39]

---

[37] *Edelman v. Ralph Printing & Lithographing, Inc.*, 189 Neb. 763, 764, 205 N.W.2d 340, 340 (1973). But see, *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 717 N.W.2d 907 (2006) (without discussion of exclusivity remanding for further proceeding tort claim in district court for retaliatory discharge for filing workers' compensation claim); *Muller v. Tri-State Ins. Co.*, 252 Neb. 1, 560 N.W.2d 130 (1997) (exclusivity did not apply to claim under employer's underinsured motorist coverage even though plaintiff widow received compensation from employer's workers' compensation carrier for death from automobile accident).

[38] *Pittman v. Western Engineering Co., supra* note 24.

[39] *Id.* at 928, 813 N.W.2d at 498.

- 419 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

In *Bennett v. Saint Elizabeth Health Sys.*,[40] we held that the plaintiff's medical malpractice action was barred by the exclusivity provisions of the Nebraska Workers' Compensation Act when she sought to recover for aggravation of an injury that arose out of and in the course of her employment at a hospital, which aggravation was allegedly caused by the same hospital when it negligently performed physical therapy treatment of the original injury. There was no dispute that the plaintiff was entitled to workers' compensation benefits for both the original injury and the injury sustained during physical therapy, and we observed there was no inference in the record that the plaintiff's physical therapy was an unnecessary or unreasonable treatment for her initial injury. We reasoned that because the plaintiff would not have undertaken the physical therapy "but for" the original compensable injury to that shoulder, the consequential injury to the left shoulder was related to her employment, and therefore, it was a covered injury under the Nebraska Workers' Compensation Act.[41]

We similarly held in *Ihm v. Crawford & Co.*[42] that an action in district court to recover for additional injuries caused by a bad faith delay in providing authorization for treatment was barred by the exclusivity provisions of the Nebraska Workers' Compensation Act, disagreeing with the plaintiff's argument that the injuries caused by the subsequent intentional tort did not arise out of his work-related injury. We explained that the alleged tortious acts were "completely intertwined with the original injury":

> While the alleged tortious conduct of the appellees, in refusing to timely authorize needed medical treatment, may have come after the original injury, the conduct was not independent of the injury. Rather, the alleged tortious acts of the appellees were completely intertwined with

[40] *Bennett v. Saint Elizabeth Health Sys., supra* note 27.

[41] *Id.* at 307, 729 N.W.2d at 85.

[42] *Ihm v. Crawford & Co., supra* note 29.

- 420 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

the original injury, as their acts related directly to an alleged bad faith delay in authorization of further treatment for the original injury.[43]
We observed that the penalties under the act for such bad faith were limited to attorney fees and thus provided little deterrence to the bad faith handling of claims; still, it was the province of the Legislature, not this court, to strengthen the deterrent effect of administrative penalties within the act as public policy may dictate.[44]

### Arising From Such Injury

The statutory scheme dictates that Dutcher and the Department agreed to be subject to the Nebraska Workers' Compensation Act. The Department is "such employer" for purposes of the release provision in § 48-148. There is no dispute that Dutcher's knee injury and associated restrictions for which Dutcher received workers' compensation benefits— and which restrictions were the stated reasons the Department concluded she was unable to fulfill the regular duties of her position—were the result of an accident arising out of and in the course of her employment. Dutcher was given vocational rehabilitation for that injury, which she was eligible for under § 48-162.01(3), by being "unable to perform suitable work for which he or she has previous training or experience," as a result of the injury. The question is whether, under the facts of this case, Dutcher's discrimination action in district court under the NFEPA was a claim for compensation "arising from such injury,"[45] which would constitute "any other method, form, or amount of compensation or determination [of compensation]."[46]

Dutcher points out there is case law in other jurisdictions holding that the exclusivity provisions of the governing

---

[43] *Id.* at 826, 580 N.W.2d at 120.

[44] *Ihm v. Crawford & Co., supra* note 29.

[45] § 48-148.

[46] § 48-111.

- 421 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

workers' compensation laws do not bar discrimination actions based on a disability stemming from the personal injury for which workers' compensation benefits were obtained.[47] Those courts reason that statutes barring discrimination provide a remedy for "intangible injuries which rob a person of dignity and self-esteem and with eliminating a discriminatory environment in the workplace that affects not only the victim of discrimination but the entire workforce and the public welfare."[48]

---

[47] See, *Mangin v. Westco Security Systems, Inc.*, 922 F. Supp. 563 (M.D. Fla. 1996); *Davis v. Dillmeier Enterprises, Inc.*, 330 Ark. 545, 956 S.W.2d 155 (1997) (remedies granted to employee on account of injury); *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 959 P.2d 752, 77 Cal. Rptr. 2d 445 (1998) (plain language of exclusive remedy provisions of workers' compensation law apparently limits those provisions to division of labor code remedies); *Hardaway Management Co. v. Southerland*, 977 S.W.2d 910 (Ky. 1998); *Daniel v. City of Minneapolis*, 923 N.W.2d 637 (Minn. 2019) (on account of such injury); *Folan v. State/DCYF*, 723 A.2d 287 (R.I. 1999) (right to compensation for injury under chapters of compensation act, and remedy for injury granted by those chapters, shall be in lieu of all rights and remedies as to that injury); *Gallipo v. City of Rutland*, 173 Vt. 223, 789 A.2d 942 (2001); *Messer v. Huntington Anesthesia Group, Inc.*, 218 W. Va. 4, 620 S.E.2d 144 (2005) (not liable to respond in damages at common law or by statute for injury or death of any employee, however occurring, but injuries caused by employer's deliberate intention exempted from workers' compensation act); *Byers v. Labor and Industry Review Com'n*, 208 Wis. 2d 388, 561 N.W.2d 678 (1997) (where such conditions for employer's liability under workers' compensation act exist, right to recovery of compensation shall be exclusive remedy against employer). See, also, *Whitson v. City of Hoover*, 14 So. 3d 98 (Ala. 2009) (age discrimination claim); *Claxton v. Waters*, 34 Cal. 4th 367, 96 P.3d 496, 18 Cal. Rptr. 3d 246 (2004) (sexual harassment); *Byrd v. Richardson-Greenshields-Securities*, 552 So. 2d 1099 (Fla. 1989) (sexual harassment); *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky. 1992) (sex discrimination); *Cox v. Glazer Steel Corp.*, 606 So. 2d 518 (La. 1992) (workers' compensation act specifically provides that it does not bar other statutory causes of action); *King v. Bangor Federal Credit Union*, 568 A.2d 507 (Me. 1989); *Gunn v. Consolidated Rural Water & Sewer*, 839 P.2d 1345 (Okla. 1992) (retaliatory discharge).

[48] *Byers v. Labor and Industry Review Com'n, supra* note 47, 208 Wis. 2d at 397, 561 N.W.2d at 681-82.

- 422 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

The court in *Daniel v. City of Minneapolis*[49] reasoned that those intangible harms are not "such injury" referred to in the workers' compensation laws, which is limited to personal injury within the coverage of the workers' compensation acts. Further, nothing in the civil rights laws of that state indicate "the Legislature intended an employee's civil right to be free from discrimination to hinge on *where*, *when*, or *how* the disability arose."[50]

But the workers' compensation statutes relevant to cases from other jurisdictions rejecting workers' compensation exclusivity, vis-a-vis civil rights actions, generally lack the same "arising from" language found in the Nebraska Workers' Compensation Act. Nor do the workers' compensation statutes in those jurisdictions always include injuries stemming from an employer's intentional wrongdoing,[51] as does the Nebraska Workers' Compensation Act.

Further, dissenting opinions in those cases point out that the workers' compensation laws already provide a remedy for the refusal to return an injured employee to suitable work and that even if civil rights laws were meant to remedy different injuries, the workers' compensation laws plainly and explicitly provide that such remedy is exclusive.[52] They also point out that the quid pro quo balance to be struck is a matter of public policy; the remedy for any harshness resultant from the rule of exclusiveness is wholly legislative.[53] Finally, it has been said that allowing both civil rights actions and workers' compensation actions to coexist implicates double recovery and "likely will result in a proliferation of failure-to-accommodate

---

[49] See, e.g., *Daniel v. City of Minneapolis, supra* note 47.

[50] *Id*. at 650.

[51] See *Messer v. Huntington Anesthesia Group, Inc., supra* note 47.

[52] *Davis v. Dillmeier Enterprises, Inc., supra* note 47 (Newbern, J., dissenting). See, also, *Daniel v. City of Minneapolis, supra* note 47 (Anderson, J., dissenting).

[53] *Daniel v. City of Minneapolis, supra* note 47 (Anderson, J., dissenting).

- 423 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

litigation over workplace injuries"[54]—matters that, again, are best left with the Legislature.

As discussed, we have consistently rejected arguments that a civil claim in district court did not arise from the workplace injury, because it stemmed from intentional conduct or because the nature of the damages incurred were mental rather than physical. Under the Nebraska Workers' Compensation Act, the employee gives up the right to complete compensation.

We have described "arising from" under § 48-148 as "but for" causation. We said in *Pittman v. Western Engineering Co.*[55] that "arising from" refers to a "rational nexus." In other contexts, we have understood phrases with "arising" or similar as referring to "but for" causation, with some caveats. With respect to "arising out of" employment under § 48-101, we have held that the test is whether the act is "reasonably incident thereto, or is so substantial a deviation as to constitute a break in the employment which creates a formidable independent hazard."[56] In the context of liability policies, we have interpreted the term "arising out of" as "ordinarily understood to mean originating from, growing out of, or flowing from; and requiring only a 'but for' causal connection."[57] In the context of an exemption to the waiver of sovereign immunity for claims "arising out of" certain listed intentional torts, we have described the exemption as applicable under "but for" causation, whenever the claim stems from, arises out of, is inextricably linked to, is essential to, and would not exist without one of the underlying intentional torts—though we have acknowledged there could be circumstances "'so attenuated'" from the listed intentional tort that the claim would not fairly be characterized as arising

---

[54] *Id.* at 658.

[55] *Pittman v. Western Engineering Co., supra* note 24.

[56] *Misek v. CNG Financial*, 265 Neb. 837, 842, 660 N.W.2d 495, 500 (2003) (internal quotation marks omitted).

[57] See *Federated Serv. Ins. Co. v. Alliance Constr.*, 282 Neb. 638, 649-50, 805 N.W.2d 468, 478 (2011).

- 424 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

out of it.[58] The Court of Appeals in *Hammond v. Nemaha Cty.*[59] utilized, in the context of Neb. Rev. Stat. § 81-8,219 (Reissue 1996), Black's Law Dictionary's definition of "arise" as "[t]o spring up, originate, to come into being," as well as another court's explanation that "arising out of" means "causally connected with, not proximately caused by, and that a but for causation, that is, a cause and result relationship, is enough."[60]

The exclusivity provisions of the Nebraska Workers' Compensation Act are broadly worded. At the same time, the NFEPA is silent on its application respecting disabilities stemming from workplace injuries covered by the Nebraska Workers' Compensation Act. Especially in light of our articulation of the broad meaning of similar language, the Legislature had the ability to clearly exclude from the exclusivity provisions of the Nebraska Workers' Compensation Act claims like the case at bar. Yet, it did not do so.

We hold that for purposes of § 48-148, Dutcher's claimed discrimination under the NFEPA was a claim "arising from" the knee injury that was caused by an accident arising out of and in the course of her employment and, thus, "such injury." Therefore, she cannot obtain additional remedies through a civil action in district court under the NFEPA.

Nothing in this opinion should be interpreted as restricting an employee's ability to file a charge with the Equal Opportunity Commission. And we do not suggest that discrimination is a rational or a logical result of having a personal injury. However, in this case, there is a sufficient nexus between the injury Dutcher was given workers' compensation for and her civil action under the NFEPA such that the NFEPA action arose from her workplace injury.

---

[58] See *Dion v. City of Omaha*, 311 Neb. 522, 541, 973 N.W.2d 666, 682 (2022). Accord *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021).

[59] *Hammond v. Nemaha Cty.*, 7 Neb. App. 124, 581 N.W.2d 82 (1998).

[60] *Id.* at 129, 581 N.W.2d at 87 (internal quotation marks omitted).

- 425 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
DUTCHER v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 312 Neb. 405

Whether there hypothetically may be circumstances so attenuated from the work-related injury that a NFEPA claim against that same employer would not fairly be characterized as arising from the work-related injury need not be determined here. Dutcher, through disability payments and vocational rehabilitation, was compensated under the quid quo pro system established by the Legislature for the very inability to work that the Department stated was the reason for firing her.

Regardless of whether that reason was pretextual as Dutcher claims, the NFEPA claim arises from the personal injury incurred within the course and scope of her employment with the Department. To allow Dutcher additional relief in a civil action in district court under the NFEPA would be to judicially interfere with the quid pro quo determined by the Legislature through the Nebraska Workers' Compensation Act.

Changes in the workers' compensation laws, and in the public policies recognized in those laws, must emanate from the lawmaking power of the Legislature and not from the courts.[61] If the Legislature determines victims of employer discrimination on the basis of disabilities caused by injuries covered by workers' compensation with that same employer should have the additional remedies of a civil action under the NFEPA, it can pass an amendment plainly so providing.

## CONCLUSION

Viewing the evidence in a light most favorable to Dutcher and giving her the benefit of all reasonable inferences deducible from the evidence presented at the summary judgment hearing, because of the exclusivity provisions of the Nebraska Workers' Compensation Act, we determine the district court lacked jurisdiction over Dutcher's NFEPA action. We affirm the judgment of the district court granting summary judgment in favor of the Department.

Affirmed.

---

[61] *Estate of Teague v. Crossroads Co-op Assn., supra* note 6.